UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------
In re:
ROBERT A. MOORE,                                    Case No. 10-11491
                            Debtor.                            Chapter 13
-----------------------------------------------------------
APPEARANCES:

Richard Croak, Esq.
*Attorney for Debtor*
314 Great Oaks Blvd.
Albany, NY 12203

Ganz Wolkenbreit & Siegfeld LLP         Robert E. Ganz, Esq.
*Attorneys for Creditor Frank J. Crisafulli*
One Columbia Circle
Albany, NY 12203

Hon. Robert E. Littlefield, Jr., Chief United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Before the court is a motion by Frank J. Crisafulli for an order permitting him to file a late proof of claim under Rule 9006(b)(1)[1] on the grounds that Crisafulli's failure to submit a timely claim was due to "excusable neglect."

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A), and 1334.

## FACTS

The following facts are not in dispute. Frank J. Crisafulli and the Debtor were business partners. Crisafulli loaned money to the Debtor to finance a tanning salon franchise. In 2005, Crisafulli commenced an action in state court against the Debtor to recover the money he had

---

[1] Unless otherwise noted, all rule references are to the Federal Rules of Bankruptcy Procedure and all statutory references are to Title 11, United States Code.

1

loaned to him.  Crisafulli prevailed and received a judgment against the Debtor in the amount of $233,640.58 on December 15, 2005.

The Debtor filed a voluntary petition for relief under chapter 13 and related schedules and statements on April 20, 2010.  On Schedule A, Real Property, the Debtor lists a future interest in his former marital residence.  More specifically, the Debtor indicates he is entitled to 45 percent of the value of the home when it is sold pursuant to the terms of his divorce.  Pursuant to an appraisal obtained by the Debtor, the property has a value of $218,000.  On Schedule B, Personal Property, the Debtor lists assets having a combined value of $129,340.65.  Included in the Debtor's personal property are jewelry, firearms, a vehicle, several trucks, and a snow plow.

Crisafulli is listed on Schedule D, Creditors Holding Secured Claims, as the holder of a noncontingent, liquidated, undisputed claim evidenced by a judgment.  The security listed is the Debtor's interest in real estate with a value of $0.  Thus, the entire debt is listed as unsecured. No other secured debt is scheduled.  On Schedule E, Creditors Holding Unsecured Priority Claims, the Debtor lists a tax liability of $17,000 owed to New York State.  The New York State Department of Taxation and Finance filed a timely proof of claim on May 3, 2010, in the amount of $17,072.20.  (Claim No. 3.)  The claim form indicates the entire claim is secured by virtue of a tax warrant filed in Albany County on March 13, 2007.

According to Schedule F, Creditors Holding Unsecured Nonpriority Claims, the Debtor's unsecured debt totals $212,124.80 and consists of credit card liabilities, medical expenses, and a claim held by M&T Bank for $176,950 pursuant to a guaranty.  None of these claims are marked "disputed," "unliquidated," or "contingent," except a claim for medical services in the amount of

$915.80, which is listed as disputed. Crisafulli's attorney is also included on Schedule F for "Notice Only" purposes with the notation "Collection Account Frank J. Crisafulli."

The Debtor's chapter 13 plan provides for monthly plan payments of $100 for a term of 60 months, plus the proceeds from an auction of certain personal property. Under the proposed plan, unsecured creditors will receive a dividend of 10 percent. The plan makes no provision for the payment of Crisafulli's judgment.

Crisafulli and his counsel received a copy of the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines (the "Notice"). Pursuant to the Notice, the first meeting of creditors was scheduled for May 26, 2010, and the bar date for filing proofs of claim was statutorily set at August 24, 2010, ninety days later. As a result of the bankruptcy, Crisafulli's collection activities were stayed. Crisafulli's file was put under "inactive status" by his attorney and none of the deadlines contained in the Notice were calendared.

On or about September 2, 2010, upon inquiry from Crisafulli regarding the Debtor's bankruptcy case and its impact on his judgment, Crisafulli's counsel learned that the claims bar date had passed some nine days earlier. Counsel hastily filed a proof of claim in the amount of $325,010.05 on September 3, 2010, consisting of the original judgment amount of $233,640.58 and judgment interest up to the filing date of the Debtor's petition in the amount of $91,369.47. Crisafulli characterizes his claim as being secured by a judgment against real property. (Claim No. 10.) The secured and unsecured portions of the claim are listed as "unknown."

## ARGUMENTS

Crisafulli argues that the court should exercise its discretion to permit him to file a late proof of claim. Relying primarily on *Pioneer Investment Services Co. v. Brunswick Associates*,

507 U.S. 380 (1993), Crisafulli asserts that his untimely proof of claim should be allowed based upon excusable neglect. He offers a melange of cases from the Second Circuit where courts have applied *Pioneer* liberally in allowing late-filed claims in chapter 11 cases, and when vacating default judgments.

Although not raised in Crisafulli's original motion papers, at conferences conducted in connection with this matter and in his memorandum of law in support of his motion, Crisafulli argues, alternatively, that the court should sua sponte dismiss the Debtor's case as he is not eligible for relief under chapter 13 because his noncontingent, liquidated, unsecured debts exceed the statutory eligibility limit. Crisafulli asserts that at the time of filing, the Debtor owed him $325,010.05 as a result of accumulated interest on his judgment. According to Crisafulli, once his claim is added to the total listed on Schedule F, the Debtor's unsecured debts rise to $439,034.85, which exceeds the statutory maximum of $360,475 under § 109(e).

With respect to Crisafulli's late-filed claim, the Debtor contends there is no provision in the Bankruptcy Code that would permit the court to allow the late-filed claim. He cites to Rule 3002 as the controlling precedent and argues that it provides six scenarios where the filing of a proof of claim after the bar date is permitted in a chapter 13 case. As Crisafulli's claim does not fall into any of the enumerated categories, the Debtor asserts the claim must be disallowed.

The Debtor objects to Crisafulli raising eligibility without filing a motion to dismiss. If the court entertains this argument, the Debtor lays out two methods of calculating his debts: according to the schedules as filed, and according to the claims as filed.[2] The Debtor argues that

---

[2] The Debtor asserts that his schedules as filed indicate $234,000.00 in secured debts, $212,124.80 in unsecured debts, and $17,000.00 in priority debts. (Debtor's Mem. in Opp'n to Extending Date to File Claims 3, ECF No. 29.) According to the claims filed in his case, the Debtor states he has $17,072.20 in secured debts, $32,630.71 in unsecured debts, and $327,130.77 in debts characterized as unknown. (*Id.* at 3-4.) The Debtor indicates that if the claims characterized as unknown are added to the unsecured claims his unsecured debts are $359,760.48. (*Id.* at 4.)

under either method, his noncontingent, liquidated, unsecured debts do not exceed the statutory maximum.

## DISCUSSION

*Late Filed Claim*

In a chapter 13 case, a prerequisite to an allowance of a claim and a creditor's right to receive a distribution under a debtor's plan is a timely filed proof of claim. Section 502 provides that:

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.
>
> (b) . . . if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
>     . . . .
>
> (9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under . . . the Federal Rules of Bankruptcy Procedure .

11 U.S.C. § 502(a), (b)(9). Rule 3002, which sets forth the procedure and deadline for filing proofs of claim in a chapter 13 case, therefore, governs. It provides that "a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors." Fed. R. Bankr. P. 3002(c). The only exceptions to the strict deadline for filing proofs of claims in a chapter 13 case are the six situations set forth in Rule 3002(c), none of which are relevant to this case.[3]

---

Alternatively, if Crisafulli's claim is treated as secured to the extent of $98,100, rather than "unknown," the Debtor concludes his secured debt is $115,072.20 and his unsecured debt is $261,760.48. (*Id.*)

[3]Federal Rule of Bankruptcy Procedure 3002(c) provides:

Crisafulli's "excusable neglect" argument is misplaced. Rule 9006 governs computing and extending time periods in bankruptcy cases in general. Rule 9006(b), relied upon by Crisafulli, permits extensions of time after the expiration of the specified time period where the failure to act was the result of "excusable neglect." Fed. R. Bankr. P. 9006(b)(1). Rule 9006(b)(3), however, states that the court may enlarge the time for taking action under Rule 3002(c) "only to the extent and under the conditions set forth in [Rule 3002(c)]." Fed. R. Bankr. P. 9006(b)(3). Thus, while in a chapter 11 case, a court may extend the bar date for filing a proof of claim based upon "excusable neglect," *Pioneer Inv. Serv. Co. v. Brunswick Assocs.*, 507 U.S.

---

(c) Time For Filing. In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code, except as follows:

(1) A proof of claim filed by a governmental unit, other than a claim resulting from a tax return filed under § 1308, is timely filed if it is filed not later than 180 days after the date of the order for relief. A proof of claim filed by a governmental unit for a claim resulting from a tax return filed under § 1308 is timely filed if it is filed no later than 180 days after the date of the order for relief or 60 days after the date of the filing of the tax return. The court may, for cause , enlarge the time for a governmental unit to file a proof of claim only upon motion of the governmental unit made before expiration of the period for filing a timely proof of claim.

(2) In the interest of justice and if it will not unduly delay the administration of the case, the court may extend the time for filing a proof of claim by an infant or incompetent person or the representative of either.

(3) An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property. If the judgment imposes a liability which is not satisfied, or a duty which is not performed within such period or such further time as the court may permit, the claim shall not be allowed.

(4) A claim arising from the rejection of an executory contract or unexpired lease of the debtor may be filed within such time as the court may direct.

(5) If notice of insufficient assets to pay a dividend was given to creditors under Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall give at least 90 days' notice by mail to creditors of that fact and of the date by which proofs of claim must be filed.

(6) If notice of the time to file a proof of claim has been mailed to a creditor at a foreign address, on motion filed by the creditor before or after the expiration of the time, the court may extend the time by not more than 60 days if the court finds that the notice was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim.

380, 388-89 (1993), "excusable neglect" is not a valid basis to permit a proof of claim to be filed in a chapter 13 case beyond the time period set forth in Rule 3002(c). *In re Aboody*, 223 B.R. 36, 37-39 (collecting cases) (1st Cir. BAP 1998); *In re Bourgoin*, 306 B.R. 442, 444 (Bankr. D. Conn. 2004). The court has no equitable power to extend a creditor's time to file a proof of claim in a chapter 13 case. *In re Daniels*, --- B.R. ----, No. 09–22822 (RDD), 2011 WL 4852258, at *3 (Bankr. S.D.N.Y. Oct. 12, 2011). As a result, Crisafulli's claim is disallowed.[4]

*Eligibility*

The court may dismiss a chapter 13 case for cause, after notice and a hearing, on request of the United States Trustee or a party in interest. 11 U.S.C. § 1307(c). A creditor is a party in interest. *In re Muscatello*, 1:06-CV-453 (LEK), 2006 WL 3437469, at *4 (N.D.N.Y. Nov. 29, 2006). Although Crisafulli does not hold an allowed claim, he is nevertheless a creditor under the Bankruptcy Code. Under the Code, a "creditor" is defined as "an entity that has a claim against the debtor at the time of or before the order for relief concerning the debtor. 11 U.S.C. § 101(10)(A). A "claim" is defined as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

> Whether an entity has a timely filed claim or not does not change its "creditor" status within the meaning of the Bankruptcy Code. An unfiled or tardily filed claim still carries with it a contingent right to payment that is extinguished only upon the issuance of a discharge. Until and unless that discharge is issued to the debtor, any entity with such a contingent right to payment is entitled to the full universe of protections awarded to a "creditor" under the Bankruptcy Code.

---

[4] It is well established that a discharge in bankruptcy does not extinguish a prepetition lien on real property. *Farrey v. Sanderfoot*, 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed. 2d 337 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy"). Thus, although a bankruptcy discharge will extinguish Crisafulli's in personam claim against the Debtor, it will have no effect on Crisafulli's in rem interest, if any, against the Debtor's real property.

*In re Cotte*, No. 05–19711, 2009 WL 3753891, at *3 (Bankr. N.D.N.Y. Nov. 5, 2009); *See In re Haslam*, Nos. WW-07-1391-JuPaD, 07-10112, 2008 WL 8444816, at *4 (9th Cir. BAP Mar. 31, 2008) ("[A]n unsecured creditor . . . does not lose its standing as a party in interest simply because it failed to file a timely proof of claim."). Thus, Crisafulli's failure to file a proof of claim does not preclude him from being a party in interest with standing to seek dismissal of the Debtor's case. Crisafulli still has an actual financial interest in ensuring that his claim against the Debtor is not discharged in a case where he asserts the Debtor is ineligible for relief because his noncontingent, liquidated, unsecured debts exceed the maximum set forth in § 109(e).

While there is no formal motion to dismiss the Debtor's case before the court, Crisafulli raised Debtor's eligibility at conferences held in connection with the pending motion and in the memorandum in support of his motion. The Debtor has had the opportunity to address the legal issues in the memorandum of law he filed in opposition to Crisafulli's motion. Thus, the court finds no prejudice in considering the issue. Additionally, the Bankruptcy Code provides the court with the power to:

> issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse or process.

11 U.S.C. § 105(a). This inherent power includes dismissing a case sua sponte if the debtor is not eligible for relief. *Hammers v. IRS (In re Hammers)*, 988 F.2d 32, 34-35 (5th Cir. 1993); *Kestell v. Kestell (In re Kestell)*, 99 F.3d 146, 149 (4th Cir. 1996) (citing *Hammers*, 988 F.2d at 34-35).

  Eligibility to proceed under chapter 13 is determined under § 109(e), which provides that:

> Only an individual . . . that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $360,475 and noncontingent, liquidated, secured debts of less than $1,081,400 . . . may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e).[5]

  A § 109(e) analysis begins with a look at the debt amassed by a debtor as of the date the petition is filed. *In re Reader*, 274 B.R. 893, 898 (Bankr. D. Colo. 2002) ("Regardless of when the eligibility decision is actually made, Section 109(e) states that it must reflect the claims as they existed on the date of the filing."). This would include all debts the debtor is liable for on the date of filing, not just claims that have been filed by creditors. *In re Smith*, 325 B.R. 498, 502 (Bankr. D.N.H. 2005) ("Eligibility for chapter 13 is not based upon postpetition events such as allowed claims, filed claims, or treatment of claims in a confirmed chapter 13 plan."). Thus, the starting point of determining chapter 13 eligibility is usually the debtor's schedules. This approach provides the benefit of moving forward with a chapter 13 proceeding without litigating at the inception of a case whether the court should ultimately allow a particular claim, which preserves a debtor's limited resources. *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 757 (6th Cir. 1985).

  Courts have varied in their assessments of which debts should be included in the eligibility calculation. Some courts place primary reliance on the characterization and amount of debt set forth in the debtor's schedules and only look past the petition where there is evidence of bad faith. *See Pearson*, 773 F.2d at 756 ("a court should rely primarily upon the debtor's

---

[5] The dollar amounts represent the limits in effect on April 20, 2010, the date the Debtor filed his petition. The amounts are subject to periodic adjustments pursuant to § 104.

9

schedules checking only to see if the schedules were made in good faith on the theory that section 109(e) considers debts as they exist at the time of filing, not after a hearing"); *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 982 (9th Cir. 2001).

Some courts will justify looking past a debtor's schedules to determine a debtor's liabilities without first finding a lack of good faith if they can determine with " 'a legal certainty' " that a debtor owes more than what was scheduled. *In re Redburn*, 193 B.R. 249, 255 (Bankr. W.D. Mich. 1996) (quoting *In re Mannor*, 175 B.R. 639, 641 (Bankr. E.D. Mich. 1994)). Other courts appear to apply a balanced approach. *In re Pennypacker*, 115 B.R. 504, 506 (Bankr. E.D. Pa. 1990) (rejecting approach that gives debtor unbridled authority to determine eligibility for chapter 13 relief by relying solely upon the labels the debtor ascribes to debts). In considering eligibility

> it is appropriate for a court . . . to rely primarily upon a debtor's schedules and proofs of claim, checking only to see if these documents were filed in good faith. In so doing, however, the court should neither place total reliance upon a debtor's characterization of a debt nor rely unquestionably on a creditor's proof of claim, for to do so would place eligibility in control of either the debtor or the creditor. At a hearing on eligibility, the court should thus, canvass and review the debtor's schedules and proofs of claim, as well as other evidence offered by a debtor or the creditor to decide only whether the good faith, facial amount of the debtor's liquidated and non-contingent debts exceed statutory limits.

*Barcal v. Laughlin (In re Barcal)*, 213 B.R. 1008, 1015 (B.A.P. 8th Cir. 1997) (citations omitted).

The court endorses the proposition enunciated by Judge Lynn in *In re Arcella-Coffman*, 318 B.R. 463, 475 (Bankr. N.D. Ind. 2004), that the debtor's schedules be used as a "jumping off" place for determining eligibility under § 109(e).

> Recognizing that a debtor's schedules are a potentially imperfect measure of the debtor's debts, the Court concludes that a more appropriate approach is to use the debtor's schedules as a starting point in the section 109(e) inquiry, but also to

>consider postpetition events and developments to the extent (and only to the extent) they shed light on the amount of secured and unsecured debt actually owed by the debtor *at the time of the filing of the petition.* [footnote omitted]. For example, in a situation . . . where a secured debt is mistakenly scheduled as an unsecured obligation, it would exalt form over substance to refuse to consider a postpetition amendment to the schedules that properly classifies the indebtedness. Similarly, if it were to become evident postpetition that the conditions giving rise to a contingent liability all occurred prepetition, common sense requires recognition of the reality that the debtor was liable for the debt on the petition date. [emphasis in original].

*Id.* at 475 (quoting *In re Hatzenbuehler*, 282 B.R. 828, 833 (Bankr. N.D.Tex. 2002)).

While the Second Circuit has not addressed this issue directly, it has taken into account materials outside a debtor's schedules in determining eligibility without first finding a lack of good faith. *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 305 (2d Cir. 1997) (finding officer's debt can be easily ascertained from statutory provisions and from tax returns filed by corporation).

In the present case, the Debtor contends that according to both his schedules and the filed claims, he is eligible to be a debtor under chapter 13. The court disagrees. A summary determination can be made that the Debtor's debt to Crisafulli was mischaracterized and exceeds the amount listed by the Debtor based upon the Debtor's schedules, the proof of claim filed by Crisafulli, and other readily ascertainable information.

Under New York law, interest began accruing on Crisafulli's judgment on the date of its entry at 9 percent per year. N.Y. C.P.L.R. 5003, 5004.[6] The Debtor only scheduled the original

---

[6] New York Civil Practice Law and Rule 5003 provides:
>Every money judgment shall bear interest from the date of its entry. Every order directing the payment of money which has been docketed as a judgment shall bear interest from the date of such docketing.

N.Y. C.P.L.R. 5003.

New York Civil Practice Law and Rule 5004 provides:

11

judgment amount. Considering the interest that accumulated on the judgment up to the date of filing, it appears the Debtor's liability to Crisafulli as of the filing date was $325,010.05. While the Debtor characterizes Crisafuli's entire judgment lien debt as unsecured on Schedule D, the Debtor's interest in real property suggests the claim is at least partially secured.

Section 506(a) provides, in pertinent part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, . . . is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1).

Although § 506(a) speaks in terms of an "allowed claim," it is necessary to apply § 506(a) to a § 109(e) determination to prevent "raising form over substance and manipulation of the debt limits" to achieve chapter 13 eligibility. *In re Soderlund*, 236 B.R. 271, 274 (9th Cir. 1999). Four circuit courts, and the majority of the bankruptcy courts, have held that the undersecured portion of a secured debt should be counted as unsecured debt for purposes of a § 109(e) eligibility analysis. *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 983 (9th Cir. 2001) (citing *Brown & Co. Securities Corp. v. Balbus (In re Balbus)*, 933 F.2d 246, 247 (4th Cir. 1991); *Miller v. United States*, 907 F.2d 80, 81-82 (8th Cir. 1990); *In re Day*, 747 F.2d 405, 407 (7th Cir. 1984); *In re Soderland*, 236 B.R. at 273-74); *see also*, *In re Rifkin*, 124 B.R. 626, 629 (Bankr. E.D.N.Y. 1991) (citations omitted); *In re Jerome*, 112 B.R. 563, 566 (Bankr. S.D.N.Y. 1990). The court adopts the majority view. Based upon the Debtor's appraisal, the Debtor's 45 percent interest in his former marital residence has a value of $98,100. Thus, Crisafulli's claim

---

Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute.
N.Y. C.P.L.R. 5004.

should be bifurcated into a secured claim of $98,100 and an unsecured claim of $226,910.05 for purposes of determining whether the Debtor is eligible for relief under chapter 13.

The Debtor schedules $212,124.80 in other unsecured debts on Schedule F. The Debtor also scheduled the New York State Department of Tax and Finance as the holder of an unsecured priority claim in the amount of $17,000. The proof of claim filed by New York State, however, indicates the Debtor's tax debt of $17,072.20 is secured. According to the Debtor's schedules, he possesses personal property in an amount exceeding $17,072.20. Thus, the court will not include this debt in the calculation of the Debtor's noncontingent, liquidated, unsecured debt.

The majority of the Debtor's unsecured debt, namely $176,950.00, is attributable to a guaranty given to M&T Bank. A guaranty is the classic example of a contingent debt as the guarantor has no liability until the principal obligor defaults. *Glaubitz v. Grossman* (*In re Glaubitz*), No. 10-C-927, 2011 WL 147931, at *1 (E.D. Wis. Jan. 18, 2011) (citations omitted); *see In re Fischel,* 103 B.R. 44, 47-48 (Bankr. N.D.N.Y. 1989). In the case *sub judice*, the question of contingency turns on whether all of the events giving rise to liability under the guaranty occurred prior to the Debtor's filing for bankruptcy. *In re Mazzeo*, 131 F.3d 295, 303 (2d Cir. 1997).

Based upon the current record, the court cannot determine whether the Debtor's debts exceed the limits imposed by § 109(e). A determination depends on whether the principal obligor of the M&T Bank debt was in default as of the date the Debtor filed his petition. If the debt owing to M&T Bank is contingent, Debtor's noncontingent, liquidated, unsecured debt would be $35,174.80. Combining this amount to the unsecured portion of Crisafulli's judgment would bring the Debtor's total noncontingent, liquidated, unsecured debt to $262,084.85, well below the $360,475 limit for eligibility purposes. If the debt owing to M&T Bank is

13

noncontingent, however, the Debtor's noncontingent, liquidated, unsecured debt would be $439,034.85, which exceeds the maximum set by § 109(e).  The court will hold off ruling on Debtor's eligibility pending a hearing to be held forthwith to determine whether the debt owed to M&T Bank was contingent or noncontingent as of the filing of the petition.

## CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that Crisafuli's motion for leave to file a late proof of claim is denied; and it is further

**ORDERED**, that the parties are directed to attend a case conference on **April 19, 2012 at 11:45 a.m.** to schedule a hearing in conformance with this decision.

Dated: April 10, 2012                               /s/ Robert E. Littlefield, Jr.
                                                    Hon. Robert E. Littlefield, Jr.
                                                    Chief United States Bankruptcy Judge